UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

GAVIN CARL LOONSFOOT and
JANELLE JOYCE LOONSFOOT,

        Petitioners,

v.

JOSEPH BROGAN et al.,

        Respondent.
_____/

Case No. 2:21-cv-89

Honorable Robert J. Jonker

## OPINION

This is a habeas corpus action brought by two pretrial detainees under 25 U.S.C. § 1303. Petitioners are detained by Respondent Baraga County Sheriff Joseph Brogan pursuant to orders from the Keweenaw Bay Indian Community Tribal Court. Respondent Judge William W. Jondreau and Judge Violet Aires serve as judges for the tribal court. Petitioners are enrolled tribal members of the Keweenaw Bay Indian Community Ojibwa tribe of Michigan.

This Court considers many habeas petitions filed by persons in the custody of a state or under the authority of the United States, petitions claiming that the custody violates the United States Constitution. The Keweenaw Bay Indian Community, however, is neither a state nor the United States, and the community is not bound by the United States Constitution.

The Supreme Court explained in *Santa Clara Pueblo v. Martinez*, 436 U.S. 49 (1978), as follows:

> Indian tribes are "distinct, independent political communities, retaining their original natural rights" in matters of local self-government. *Worcester v. Georgia*, 6 Pet. 515, 559 (1832); *see United States v. Mazurie*, 419 U.S. 544, 557 (1975); F. Cohen, Handbook of Federal Indian Law 122–123 (1945). Although no longer "possessed of the full attributes of sovereignty," they remain a "separate

    people, with the power of regulating their internal and social relations." *United States v. Kagama*, 118 U.S. 375, 381–382 (1886).  *See United States v. Wheeler*, 435 U.S. 313 (1978).  They have power to make their own substantive law in internal matters, *see Roff v. Burney*, 168 U.S. 218 (1897) (membership); *Jones v. Meehan*, 175 U.S. 1, 29 (1899) (inheritance rules); *United States v. Quiver*, 241 U.S. 602 (1916) (domestic relations), and to enforce that law in their own forums, *see, e. g., Williams v. Lee*, 358 U.S. 217 (1959).

    As separate sovereigns pre-existing the Constitution, tribes have historically been regarded as unconstrained by those constitutional provisions framed specifically as limitations on federal or state authority.  Thus, in *Talton v. Mayes*, 163 U.S. 376 (1896), this Court held that the Fifth Amendment did not "operat[e] upon" "the powers of local self-government enjoyed" by the tribes.  *Id*., at 384.  In ensuing years the lower federal courts have extended the holding of *Talton* to other provisions of the Bill of Rights, as well as to the Fourteenth Amendment.

*Id*. at 55–56 (footnote and parallel citations omitted).

  Although the tribes are not subject to the limits imposed on government by the United States Constitution, they are subject to Congress's "plenary authority to limit, modify or eliminate the powers of local self-government which the tribes otherwise possess." *Id*. at 56 (citations omitted).  In Title I of the Indian Civil Rights Act of 1968 (ICRA), 25 U.S.C. §§ 1301-1303, Congress exercised that authority to limit the self-governing powers of Indian tribes in ways that generally parallel the Bill of Rights and to afford persons detained by order of an Indian tribe the privilege of the writ of habeas corpus in the United States courts.  25 U.S.C. §§ 1302, 1303.

  Habeas corpus petitions filed by prisoners in custody pursuant to the judgment of a state court are subject to special procedural rules:  the Rules Governing § 2254 Cases in the United States District Courts.  Those rules contemplate that they may be properly applied to habeas corpus petitions filed pursuant to statutory authority other than the authority provided by 28 U.S.C. § 2254.  Rules Governing § 2254 Cases, Rule 1(b).  Other courts have concluded that the rules should apply to habeas petitions under ICRA. *See, e.g., Pacheco v. Geisen*, No. 1:17-cv-749, 2019

2

WL 1493853, at *1 n.1 (D.N.M. Mar. 6, 2019) ("The Court has determined that the rules governing 28 U.S.C. § 2254 apply to actions under 25 U.S.C. § 1303."); *Picard v. Colville Tribal Corr. Fac.*, No. 2:20-cv-427, 2021 WL 768137, at *2 (E.D. Wash. Feb. 26, 2021) ("The rules governing habeas petitions under § 2254 are applicable to habeas petitions filed under § 1303.")  This Court will likewise apply the Rules Governing § 2254 Cases to Petitioners' ICRA petition.

Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, Rules Governing § 2254 Cases; *see* 28 U.S.C. § 2243.  If so, the petition must be summarily dismissed.  Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face).  A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false.  *Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999).  After undertaking the review required by Rule 4, the Court will dismiss the petition without prejudice for failure to exhaust available tribal-court remedies.

## Discussion

**I.    Factual allegations**

Petitioners Gavin Carl Loonsfoot and Janelle Joyce Loonsfoot state the following:

> Gavin Carl Loonsfoot and J[a]nelle Joyce Loonsfoot are married and have six minor children. . . . Mr. and Mrs. Loonsfoot and all of their children are either enrolled tribal members or are eligible for enrollment.
>
> \*     \*     \*
>
> On March 24, 2021 KBIC tribal social services visited the home of Mr. and Mrs. Loonsfoot and their children three times throughout the day.  The second visit

tribal social services worker Brianna Fish and tribal social services director Alex Mayo and Det Sgt. Dale Goodreau made contact with the family. According to the two social services workers they had received allegations of two of the children possibly ingesting drugs. None of the children were showing any signs of ingesting anything of that nature. There wasn't any kind of hospital visit or report of any of the children having in fact ingested any kind of substance or drug.

Eventually, on tribal social services third visit they came with tribal police officers Tony Loonsfoot and Alden Connor and a signed and sworn by affiant warrant by Det Sgt. Dale Goodreau of the KBIC tribal police. The warrant stated the person, place, and thing to be seized was the home of Gavin and Janelle, and blood draws from Gavin, Janelle, and two of their children. The warrant stated to seize not only the blood from Janelle, Gavin, and two of their children, but any and all cellphones, log books, journals, notebooks, or anything that could be related to proving drug distribution. The tribal police made the family go to the Baraga County hospital where the blood draw would happen.

Janelle refused the blood draw so the tribal police arrested her for disobeying a lawful court order. Janelle would also be arrested on child neglect charges because she was going to be put in jail and could not care for the children according to these tribal officials.

Gavin somehow became unresponsive and is unsure what had happened but a discharge summary given to the tribal prosecutor from Marquette General Hospital revealed Baraga County Hospital had given him the blood draw "although he looked fatigued." The report noted that there were two minor children in Gavin's vehicle and that police were monitoring them while Gavin was having his blood drawn. The report states approximately 3 hours later Gavin was noted to be slumped over in his car with the two minor children. Police brought Gavin into the ER and child protective services took the minor children into custody. Marquette General's report references an unknown report, possibly from Baraga County Hospital or Tribal Police, on the situation that eventually led to Gavin being admitted to Marquette General. The report did not indicate how Gavin was transported to Marquette General or why. The report seemed to indicate that Gavin was brought back to health at the Baraga Hospital although still "obtunded."

Marquette General continues to reference an unknown report that Gavin was given two 2mg doses of Narcan but was minimally affected. The report says he suffered acute hypoxic respiratory failure, secondary to polysubstance overdose. It also states that Gavin's blood test results indicated he failed for several controlled substances.

\*   \*   \*

4

Janelle was scheduled for a court hearing by KBIC to be held on Friday the 26th of March. The court then changed her hearing to the 25th without any prior notice. Janelle was put on bond and probation immediately without any sort of representation. On Monday the 5th of April 2021, at the tribal court building where Janelle was ordered to report, she was arrested because her bond had been revoked. The court revoked her bond because they said she had no way for the court to contact her and didn't have a residence even though the court had ordered that her phone be seized and she was evicted from her tribal housing home to her knowledge. Janelle then had an arraignment and a preliminary hearing of neglect where she was given a court appointed attorney for the neglect hearing and the attorney told her, "if she did not agree to the allegations, she would never see her kids again."

Judge William W. Jondreau multiplied Janelle's punishment for her charges and her fines by four ti[m]es what the actual punishment would be according [to] the tribal code. Janelle and Gavin remain incarcerated at the Baraga County Sheriff Department and jail where they continue to request law books and they are denied.

At one point Gavin had an attorney from Michigan Indian Legal Services willing to represent him and when the attorney contacted the tribal court to inform them she would be representing him they told her he already had an attorney. After Gavin appeared at two hearings without an attorney he had contacted the attorney from MILS and she informed him the court told her that he already had an attorney. Once the MILS attorney became interested into why they would tell her that and inquired with the court, the court appointed Gavin an attorney. Gavin had this court appointed attorney before in other matters before the tribal court and the attorney told him that the tribal court has a deal that a court appointed attorney can[']t file appeals if he is a court appointed attorney for the tribal court.

Janelle had filed an appeal and request to stay proceedings to the best of her ability on her own before she was appointed an attorney and Judge William W. Jandreau stated on record that they will be moving forward regardless of an appeal. Janelle and Gavin were given a copy of the old appeals process at first then were told they had to follow a new process when they inquired into what was going on with the appeal. They then followed the new appeals process but haven't heard anything on the matter except Judge Jandreau stating they were moving forward. It is apparent the appeal was never filed with the appellate division of the tribal court.

*   *   *

The Judges have been switched around and the hearings are constantly changing and moving rapidly for Gavin and Janelle. The tribal court has confused this situation with paperwork and rescheduling court hearings to the point where a

5

>   lot of the actions taken by these officials are not understandable. Gavin and Janelle are being charged with the same crimes criminally and civilly. They contest that either of the Judges are competent to hear these cases and believe they are not licensed to practice law in any jurisdiction.

(Pet., ECF No. 1, PageID.2–4) (paragraph breaks added). Petitioners contend that there are myriad violations of the rights they enjoy under 25 U.S.C. § 1302. They ask the Court to intervene and correct the problems before the prosecution plays out any further. They ask the Court to order their release from pretrial detention. Finally, they contend that attempts at exhausting their remedies in the tribal courts are futile.

## II.    Exhaustion of Tribal Court Remedies

Before the Court may grant habeas relief to a prisoner held in custody by a state, the prisoner must exhaust remedies available in the state courts. 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). The statutory exhaustion requirement does not apply to habeas petitions under 25 U.S.C. § 1303. Nonetheless, before Petitioners may proceed with a habeas petition presenting ICRA claims, they must first exhaust their tribal remedies. *See, e.g., Valenzuela v. Silversmith*, 699 F.3d 1199, 1206 (10th Cir. 2012); *Alvarez v. Lopez*, 835 F.3d 1024, 1027 (9th Cir. 2016); *Necklace v. Tribal Court of Three Affiliated Tribes of Fort Berthold Reservation*, 554 F.2d 845, 846 (8th Cir. 1977); *see also Anderson v. Grand Traverse Band of Ottawa and Chippewa Indians Tribal Court*, No. 1:10-cv-676, 2010 WL 5625054, at *1 (W.D. Mich. Dec. 21, 2010), R. & R. adopted, 2011 WL 202090 (Jan. 19, 2011); *Lac Vieux Desert Band of Lake Superior Chippewa Indians Tribal Council v. Lac Vieux Desert Band of Lake Superior Chippewa Indians Tribal Court*, No. 2:10-cv-223, 2010 WL 3909957, at *1–2 (W.D. Mich. Sept. 14, 2010), R. & R. adopted, 2010 WL 3910026 (Oct. 4, 2010).

The requirement that an ICRA habeas petitioner exhaust tribal court remedies is born of the same comity considerations that prompt the requirement of exhaustion of state court remedies in the context of habeas petitions under 28 U.S.C. § 2254. In both contexts, however, the requirement is not inflexible. 28 U.S.C. § 2254(b)(1) ("An application for writ of habeas corpus on behalf of a person in custody shall not be granted unless it appears that—(A) the applicant has exhausted the remedies available in the court of the State; or (B)(i) there is an absence of available State corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant."); *Anderson*, 2010 WL 5625054, at *1 ("[E]xhaustion of tribal remedies may not be required . . . where an assertion of tribal jurisdiction is motivated by a desire to harass or is conducted in bad faith, or where the action is patently violative of express jurisdictional prohibitions, or where exhaustion would be futile because of the lack of an adequate opportunity to challenge the court's jurisdiction.") (internal quotes omitted).

Petitioners do not provide facts which support a claim that the assertion of tribal jurisdiction is motivated by bad faith or that the tribal court does not have jurisdiction over the claims that have resulted in Petitioners' detention. Petitioners indicate that they have little faith in the appellate process offered by the tribal court; however, they have not shown that the process is futile.[1] At most they complain that the appeals they have pursued thus far have not yet been resolved to their satisfaction.

---

[1] General Provisions governing the Keweenaw Bay Indian Community Tribal Court are set forth in Title I of the Tribal Code, available at https://www.kbic-nsn.gov/application/files/3715/6639/5588/TRIBALCODE-TITLEONE.pdf (visited May 12, 2021).

In the context of habeas petitions under § 2254, exhaustion requires a petitioner to "fairly present" federal claims so that state courts have a "fair opportunity" to apply controlling legal principles to the facts bearing upon a petitioner's constitutional claim. *O'Sullivan,* 526 U.S. at 844, 848; *see also Picard v. Connor*, 404 U.S. 270, 275-77 (1971); *Duncan v. Henry*, 513 U.S. 364, 365 (1995); *Anderson v. Harless*, 459 U.S. 4, 6 (1982). To fulfill the exhaustion requirement, a petitioner must have fairly presented his federal claims to all levels of the state appellate system, including the state's highest court. *O'Sullivan*, 526 U.S. at 845; *Wagner v. Smith*, 581 F.3d 410, 414 (6th Cir. 2009); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990).

The exhaustion requirements are similar under § 1303. "At a minimum, exhaustion of tribal remedies mean that tribal appellate courts must have the opportunity to review the determinations of the lower tribal courts." *Iowa Mut. Ins. Co. v. LaPlante*, 480 U.S. 9, 17 (1987). Petitioners have not given the tribal trial court, much less the tribal appellate court, an opportunity to finally resolve the constitutional issues they raise in their habeas petition. "Until appellate review is complete, the [tribal courts] have not had a full opportunity to evaluate the claim[s] and federal courts should not intervene." *Iowa Mut. Ins. Co.*, 480 U.S. at 17. Because Petitioners have not exhausted their tribal court remedies and because Petitioners have not alleged facts supporting the inference that exhaustion would be futile, the petition is properly dismissed without prejudice.

## **Conclusion**

The Court will enter a judgment dismissing the petition for failure to exhaust tribal-court remedies.

Dated:   May 14, 2021                              /s/ Robert J. Jonker
                                                                                      ROBERT J. JONKER
                                                                                       CHIEF UNITED STATES DISTRICT JUDGE